LENA CONWAY, APPELLANT, v. GEORGE PICKERING, EDWARD A. WIEGAND AND COURIER-POST COMPANY, RESPONDENTS.

Submitted October 28, 1932—Decided May 5, 1933.

For the appellant, *Benjamin M. Cohen* (*Albert E. Burling*, of counsel).

For the respondent Courier-Post Company, *Norman W. Harker*.

The opinion of the court was delivered by

LLOYD, J. Mrs. Conway, the plaintiff below, was crossing the Camden approach to the Delaware River Bridge in Camden when she was struck by an automobile owned by the Courier-Post Company and operated by the defendant Wiegand. She instituted an action against the owner, the operator and Pickering, who was the regular chauffeur of the defendant company. On the trial of the case and at the conclusion of the plaintiff's proofs a nonsuit was granted as to the Courier-Post Company and the plaintiff appeals from the judgment entered thereon.

From the plaintiff's proofs the jury might have found the following facts: On the night of July 5th, 1929, Pickering, having broken his glasses, procured the services of Wiegand to drive the car for him; this without the knowledge or approval of the Courier-Post Company. As the automobile, a Pontiac coupe, was returning from Philadelphia it stopped at the toll gate at the Camden end of the bridge and paid toll. At this time the traffic light of the crossing was against it. Disregarding this, Wiegand started the car up and collided with the plaintiff who was attempting to cross the street.

Pickering at the time was seated beside the driver and his testimony is somewhat conflicting as to what he was doing, part of it indicating that he was sorting materials in the car, and part of it indicating that he was observing the movement of the car and what was in front of it. He made no effort to restrain the driver in moving against the traffic light.

Under this state of the proofs we think the nonsuit was wrong. The ownership of personal property (and of course this includes an automobile) carried with it a presumption that it is within the control and operation of the owner, or his servant, and to overcome this presumption the evidence

must be "clear, convincing and uncontradicted" that such control did not exist. Such is the doctrine in this court as laid down in numerous cases. *Missell* v. *Hayes,* 86 *N. J. L.* 348; *Mahan* v. *Walker,* 97 *Id.* 304; *Tischler* v. *Steinholtz,* 99 *Id.* 149.

In the present case the evidence to relieve the owner was not of that clear, convincing and uncontradicted character which justified the withdrawal of the question from the jury, Pickering, the regular chauffeur, having testified in part of his evidence that the windshield of the automobile was clouded with mist and that he was occupied in sorting materials in the car, while another portion of his testimony would indicate that he was giving attention to the movement of the car and observing intervening objects between the point where the car started in violation of the traffic rules and the point at which the collision took place.

Apart from this, however, we think the case was for the jury on another ground. From the statement of facts already given it appears that the chauffeur, who, of course, was the servant of the Courier-Post Company, was in position to observe the movement of the car and its handling by the substituted driver. That being true he was not absolved from the duty to exercise care to see that its operation was with due and reasonable care. Conceding, for the purposes of the case, that the employer of Pickering was not responsible for the unauthorized employment of Wiegand or for the acts of Wiegand so employed, it was responsible for the acts and omissions of Pickering whom it had placed in charge of the car and who was expected to operate it or to see that it was operated carefully while he was on it, and the law in such cases, we think, is stated with accuracy by Chief Justice Cardozo in the similar case of *Grant* v. *Knepper,* 245 *N. Y.* 158, when he says, "the duty rests upon the servant with continuing obligation to keep control and exclude incompetent meddling while he remains upon the car," and we might add incompetent or careless handling, and consequently that "the driver was negligent  *  *  *  or so the triers of the facts might find, in failing to supervise or control the conduct of

his substitute who ran the car at a rate of speed presumptively excessive in the operation of a truck."

In this case it was not excessive speed but it was an equally obvious violation of the traffic laws in that the substituted driver attempted to cross the highway in the face of the pre-eminently dangerous warning of a red light. Our conclusion is that the case as presented required its submission to the jury and that the nonsuit was improper.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, CASE, BODINE, HETFIELD, DEAR, JJ.   5.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, DONGES, HEHER, VAN BUSKIRK, KAYS, WELLS, JJ.   9.